# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

ROBERT S. BOYD and
DACE C. BOYD,

           Debtors.

Case No. A05-00725-DMD
Chapter 12

**Filed On
2/2/09**

## MEMORANDUM REGARDING VITALE CLAIM

The debtors have been involved in two chapter 12 proceedings: one that was filed in 1993 and the instant proceeding which was filed in 2005. In this second proceeding, and in accordance with the terms of the confirmed plan, the debtor Dace C. Boyd has sold a portion of her Matanuska Valley agricultural property.[1] Vincent Vitale, a creditor from the prior chapter 12 case, claims that a deed of trust he obtained in 1987 still encumbers this property. $180,000.00 of the proceeds from the sale of the property has been placed in escrow pending a determination of the validity of Vitale's claim. I find that Vitale's secured claim was not avoided, modified or disallowed in the Boyds' prior bankruptcy. Vitale's lien encumbered the property at the time of the sale and has attached to the sale proceeds.

Background

The debtors first filed for chapter 12 relief on July 15, 1993.[2] In this proceeding, they listed Vincent Vitale as a creditor in their schedules and mailing matrix.

---

[1] The debtor Robert S. Boyd is deceased.

[2] *In re Boyd*, Case No. A93-00519-DMD.

On their Schedule D, Vitale was listed as a partially secured creditor holding a deed of trust lien on the debtors' Matanuska Valley real property. Schedule D reflected that $41,400.00 of Vitale's $92,000.00 claim was unsecured.[3] Additionally, Schedule D indicated that Vitale's lien was junior to other encumbrances on the property totaling $230,000.00.

Vitale received notice of the § 341 meeting and attended this meeting with his bankruptcy attorney, Cabot Christianson. Vitale and Christianson filed entries of appearance in August of 1993. On October 26, 1993, Christianson filed a timely proof of claim on Vitale's behalf. The proof of claim indicated that Vitale held a fully secured claim in the sum of $92,567.31 plus interest accruing at the rate of 10.5% per annum after June 30, 1993. No unsecured claim was submitted on Vitale's behalf.

The debtors filed their first chapter 12 plan on September 1, 1994. Paragraph three of the plan dealt with secured debts. Debts owed to the Matanuska Valley Federal Credit Union, Alaska USA Federal Credit Union and the state of Alaska ARLF "Home Place" loan were to be paid directly by the debtors, outside of the plan, according to their terms. A second debt owed to the State of Alaska ARLF was to be modified and paid outside the plan. A debt due the USA Farm Home Administration was also to be modified and paid outside the plan. Following the description of how these secured claims were to be paid, the plan stated, "The claims of Vincent Vitale shall be unsecured."

---

[3] Vitale was also listed as an unsecured creditor for $41,400.00 in the debtors' Schedule F.

The debtors filed a second plan on September 14, 1994. This plan contained an identical provision for the treatment of Vitale's claim. The plan analysis estimated that unsecured creditors would receive, pro-rata, a total of $8,840.00 over a 36 month period. This second plan was noticed to creditors on September 21, 1994. The notice provided that the court had set a confirmation hearing for October 17, 1994. It also stated:

> IF YOU OBJECT to the Plan, you must file a written objection with the Clerk of the U.S. Bankruptcy Court at 605 W. 4th Avenue, Suite 138, Anchorage, Alaska 99501, on or before the close of business on Friday, October 14, 1994. You must also serve a copy of your objection on [the Boyds' attorney] and on Larry D. Compton, Trustee, 400 D Street, Suite 210, Anchorage, Alaska 99501, on or before that date.
>
> SHOULD YOU FAIL TO OBJECT OR, HAVING OBJECTED, FAIL TO ATTEND THE HEARING, THE COURT MAY CONFIRM THE PLAN WITHOUT FURTHER NOTICE TO YOU.

The notice of confirmation hearing, with a copy of the chapter 12 plan, was served upon both Christianson and Vitale. Neither one filed an objection to the plan, but several objections to confirmation were filed by other parties.

A confirmation hearing was held on October 17, 1994. Neither Vitale nor Christianson appeared at this hearing. The hearing was continued to November 1, 1994, and then to November 10, 1994. Notice of these continued hearings was given only to those

3

parties who had attended the original hearing. Vitale and Christianson did not receive notice of the continued confirmation hearings and did not participate in either of them.

On November 10, 1994, an amended plan was filed. This plan changed the treatment of secured creditors who had filed objections to confirmation, but it did not change the proposed treatment of Vitale's claim as wholly unsecured. This plan projected that Vitale would receive $3,971.64 on his $92,000.00 claim. Vitale and Christianson weren't served with a copy of this amended plan.

At the continued confirmation hearing, held on November 10, 1994, this court also heard the United States Trustee's motion to dismiss. An order granting the motion to dismiss and denying confirmation of the plan was entered November 15, 1994. The debtors filed a motion for reconsideration on November 25, 1994. An order granting the motion for reconsideration and confirming the amended chapter 12 plan was entered on December 15, 1994. Notice that a confirmation order had been entered was served on all parties in interest, including Vitale and Christianson, the same day. The debtors subsequently requested amendments to the order confirming the plan. An amended order confirming the plan was entered on December 27, 1994. Notice of the amended order confirming plan was served on all parties in interest, including Vitale and Christianson, on December 28, 1994.

The debtors successfully completed their plan. Vitale received a check for $3,837.09 from the chapter 12 trustee, as provided under the plan. An order discharging the

4

debtors after completion of their plan was entered August 20, 1999. Vitale and Christianson were served with a copy of this order.

The debtors filed their second chapter 12 petition on June 9, 2005. Vitale was listed on the initial creditor matrix, but his name was misspelled as "Vince Vitali" and his address was listed as "unknown." Consequently, Vitale was not served with notice of the second chapter 12 bankruptcy filing.[4] On the Boyds' Schedule D, Vitale was listed as a secured creditor holding an unliquidated claim in an unknown amount.[5] His name was misspelled as before and his address was again listed as unknown.

The debtors filed a chapter 12 plan on November 8, 2005.[6] The court set the matter for hearing and ordered the debtors to serve the matrix with the order and notice of hearing.[7] The debtors never filed a certificate of service to show that this was done. In any event, it is unlikely that the debtors gave Vitale notice of the plan or confirmation hearing, since his address was "unknown." Under the debtor's November 8 plan, they proposed selling farm property to satisfy the secured claims of the United States Department of Agriculture and the State of Alaska Division of Investments. The plan made no mention of Vitale's claim.

---

[4] *See* BNC Certificate of Service re Meeting of Creditors, filed Jun. 22, 2005 (Docket No. 16).

[5] Docket No. 17, filed Jul. 12, 2005.

[6] Docket No. 29, filed Nov. 8, 2005.

[7] Order Setting Chapter 12 Confirmation Hearing and Related Deadlines, entered Nov. 10, 2005 (Docket No. 30).

5

An amended plan was filed February 2, 2006.[8] It was not accompanied by a certificate of service. This second plan listed nearly $1 million in outstanding loans to the Farm Service Agency, and also listed a $102,000.00 loan to the State of Alaska Department of Natural Resources, but again contained no provision for Vitale's claim. After numerous continuances, a confirmation hearing on the debtors' amended chapter 12 plan was held on March 16, 2006. Attorneys for the Farm Service Agency and the State of Alaska agreed to changes to the plan at the hearing. The Boyds' attorney prepared a stipulated confirmation order which was approved by counsel for both creditors. The order was entered April 14, 2006.[9] Vitale was not served with a copy of this order.

The confirmed plan contemplated the sale of the debtors' agricultural land to satisfy creditor claims. On September 1, 2008, debtor Dace Boyd moved for sale of 162.5 acres of real property to the Alaska Operating Engineer Training Program for $1.235 million.[10] Vitale apparently heard of the pending sale from Christy Erwin, an Alyeska Title Company employee. He filed an entry of appearance and request for notice on September 11, 2008. He filed an opposition to the sale on September 17, 2008,[11] followed by a motion

---

[8] Docket No. 38.

[9] Order Confirming Chapter 12 Plan, entered Apr. 14, 2006 (Docket No. 66).

[10] Motion for Sale of Real Property, filed Sept. 1, 2008 (Docket No. 74).

[11] Docket Nos. 82, 85.

6

to intervene and a motion to set aside the order confirming the chapter 12 plan.[12] He filed a motion to accept proof of claim on October 8, 2008.[13]

A hearing on the motion to sell occurred on October 9, 2008. At the hearing, Vitale agreed that the sale could go forward provided the disputed proceeds be held in escrow. An order of sale was entered on October 20, 2008. Paragraph 8 of the order provided:

> 8. Any balance owed to Vince Vitale secured by deed of trust recorded by the debtor is disputed by the debtor. Vitale, FSA and the debtor agree to escrow $185,000 to be deposited into an interest bearing account with all liens to attach to these escrowed funds in their order of entitlement and priority. The respective interest of Vitale, debtor and other lien holders in the funds shall be determined by further order of this court.[14]

An amended order was entered two days later.[15] It provided for the sale of a smaller portion of the debtor's property but the provision regarding Vitale's claim remained the same. The debtor and Vitale have filed multiple briefs regarding the validity of Vitale's deed of trust. After oral argument on January 9, 2009, the matter was submitted to the court for determination.

---

[12] Docket Nos. 89, 90.

[13] Docket No. 111.

[14] Order for Sale of Real Property, entered Oct. 20, 2008 (Docket No. 117), at p. 3.

[15] Docket No. 120.

7

Analysis

As a general rule, "unchallenged liens pass through bankruptcy unaffected."[16] However, the Bankruptcy Code provides several mechanisms for a debtor to challenge a lien. A debtor can object to the secured claim of a creditor,[17] file a motion to value security under Fed. R. Bankr. P. 3012,[18] or file an adversary proceeding to determine the validity, priority or extent of a lien in property.[19] When none of these procedures are followed, unfortunate results can occur. This case illustrates the problems that can arise when debtors fail to use the methods available in bankruptcy to avoid, modify or disallow secured claims in bankruptcy.

In *Firemen's Fund Mortgage Corporation v. Hobdy (In re Hobdy)*,[20] the Ninth Circuit Bankruptcy Appellate Panel faced a situation similar to the case at bar. A bankruptcy court confirmed a plan which reduced a secured creditor's claim from $36,787.55 to $4,532.00. The creditor subsequently moved for allowance of the full amount of its secured claim. The bankruptcy court denied the motion and the creditor appealed. The BAP

---

[16] *Shook v. CBIC (In re Shook)*, 278 B.R. 815, 821 (B.A.P. 9th Cir. 2002), *citing Long v. Bullard*, 117 U.S. 617, 620-21 (1886); *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992).

[17] Fed. R. Bankr. P. 3007.

[18] This rule permits the court to "determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim." Fed. R. Bankr. P. 3012.

[19] Fed. R. Bankr. P. 7001(2).

[20] 130 B.R. 318 (B.A.P. 9th Cir. 1991).

reversed. It found that the confirmed chapter 13 plan violated the secured creditor's right to due process because the secured claim had been reduced without notice and hearing as required under Fed. R. Bankr. P. 3007 and 9014.[21] The court stated:

> Due process requires that a creditor receive notice of any bankruptcy proceeding which is to be accorded finality. *In re Toth*, 61 B.R. 160, 165 (Bankr. N.D.Ill. 1986). Such notice must be "reasonably calculated" to apprise interested parties of the pendency of an action and to afford them an opportunity to present objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). *See also Reliable Electric Co., Inc. v. Olson Construction Co.*, 726 F.2d 620, 622 (10th Cir. 1984).
>
> In this case, the debtor failed to object to the secured claim . . . and instead challenged the claim indirectly by means of its Chapter 13 plan which proposed to substantially reduce the claim. The Bankruptcy Rules, which set forth the procedural mechanism for implementing the Code, do not permit such indirect attacks on the viability of claims.[22]

The BAP found that the secured creditor "had a right to expect that if the debtor wished to object to its claim for arrearages, the debtor would file, in accordance with the Bankruptcy Rules, a written objection with notice of a hearing on the matter."[23] Because the debtor had

---

[21] *Id.* at 321.

[22] *Id.* at 320.

[23] *Hobdy*, 130 B.R. at 321.

9

instead made an indirect challenge to the secured claim via the plan confirmation process, the secured creditor had been denied "its constitutionally protected right of due process."[24]

I faced a similar situation in a chapter 11 case, *In re Hawkins Enterprises.*[25] In *Hawkins*, I confirmed a plan that capped a secured claim at $700,000.00 and provided for monthly payments that fully amortized the claim. Link, the holder of the secured claim, sought relief from the confirmation order on a variety of grounds. One of those grounds was that Link's secured claim could not be modified in the plan because the debtor failed to file formal objections to the claim. To resolve the issue, I adopted a "middle-of-the-road approach" discussed in *In re Basham.*[26]

In *Basham*, the bankruptcy court noted that there were three approaches which courts applied to determine whether a claim could be modified within a plan. To resolve the issue, some courts chose the claims allowance process over the confirmation process, while other courts gave more weight to the confirmation process.[27] Under the middle-of-the-road approach, however, neither process was given more weight. Instead, applying the due process standard enunciated in *Mullane v. Hanover Bank and Trust*,[28] the court would look to the contents of the notice given to determine if it was "reasonably calculated, under all the

---

[24] *Id.*

[25] 3 A.B.R. 432 (Bankr. D. Alaska 1994).

[26] 167 B.R. 903 (Bankr. W.D. Mo. 1994).

[27] *Id.* at 906.

[28] 339 U.S. 306, 314 (1950).

10

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[29] Under this approach, the *Basham* court felt that the totality of the circumstances could be examined in each case to determine whether the notice given was sufficient to advise parties that their rights would be modified.[30]

Applying the middle-of-the-road approach in *Hawkins*, I found that the plan served on the creditor contained a detailed description of exactly how secured creditor Link was to be paid. Link had participated in the chapter 11 process through experienced bankruptcy counsel, but did not appear at the confirmation hearing. At one time Link had agreed to accept the plan. Later, Link decided simply not to oppose the plan. The plan provided for Link to retain her lien. I concluded that the notices contained in the plan and received by Link were reasonably calculated to apprise her that her rights could be modified. Further, Link did not rely on the claims allowance process by filing a proof of claim. I found that the requirements of due process had been met and that the chapter 11 plan was binding on Link.[31]

More recently, the BAP applied the middle-of-the-road approach in *Shook v. CBIC (In re Shook)*.[32] In *Shook*, the chapter 13 debtors scheduled CBIC as an unsecured nonpriority creditor. CBIC received notice of the bankruptcy and filed a timely, secured

---

[29] *Basham*, 167 B.R. at 907, *citing Mullane*, 339 U.S. at 314.

[30] *Basham*, 167 B.R. at 908.

[31] *Hawkins*, 3 A.B.R. 442-44.

[32] 278 B.R. 815 (B.A.P. 9th Cir. 2002).

11

proof of claim. The debtors proposed a 5 year plan which would pay the secured and priority claims. The plan specifically mentioned the secured and priority tax claims of the IRS and a priority tax claim due the State of Nevada. It made no mention of CBIC's claim. The debtors' final payment under the plan was to come from the proceeds from the sale of their home.

After the plan was confirmed, the trustee served a notice of intent to pay claims which indicated that CBIC's claim would be treated as a secured claim and paid in full, with interest. The debtors didn't file an objection to this notice and CBIC received full payment for its claim. Four years later, when the debtors placed their home on the market as required by the plan, they discovered that CBIC's claim had been paid. The debtors filed an objection to CBIC's claim at that point. They contended the funds paid to CBIC should have been applied to the IRS priority tax claim instead. They argued that CBIC's claim should have been treated as an unsecured claim because they had scheduled it this way and had treated it as unsecured in the plan. The bankruptcy court overruled the objection, and the BAP affirmed.

The BAP acknowledged its prior holding in *Hobdy*, in which it had determined that a creditor's lien could not be extinguished through the plan confirmation process.[33] It went on to state, however, "that a plan can effectively determine value and/or avoid a lien

---

[33] *Shook*, 278 B.R. at 824.

12

only if the creditor receives clear notice that the plan will do so."[34] The BAP noted that due process was the "linchpin" to determining the rights of secured creditors in a reorganization proceeding,[35] and that due process could be provided either under claims allowance procedures *or* within the context of the confirmation process, provided sufficient notice of how the lien is to be treated is given to the secured creditor.[36] The BAP went on to find that simply scheduling a creditor as unsecured was insufficient to invalidate a lien.[37] Nor could a plan provide for a lien by failing to acknowledge it or by calling the creditor unsecured.[38] Because CBIC did not receive notice that its secured claim was to be modified, its lien passed through the bankruptcy unaffected by the chapter 13 plan or the debtor's schedules.[39]

In considering the viability of Vitale's lien here, this court will look at the totality of circumstances and the sufficiency of notice given to Vitale to determine if his consensual lien was set aside by the terms of the prior, confirmed chapter 12 plan. In the Boyds' first chapter 12 case, Vitale was listed as a partially secured creditor. Vitale received notice of the bankruptcy proceeding and participated in the first meeting of creditors. Vitale employed Christianson, a sophisticated bankruptcy attorney, who filed a secured claim for

---

[34] *Id.*

[35] *Id.* at 825.

[36] *Id.* at 825 n.10, *citing* 3 Keith M. Lundin *Chapter 13 Bankruptcy* § 233.1, at 233-43 to 233-44 (3d ed. 2000).

[37] *Shook*, 278 B.R. at 827.

[38] *Id.* at 826.

[39] *Id.* at 827.

13

$92,567.31 on his behalf. All of the plans proposed by the Boyds in the first chapter 12 proceeding, including the one which was ultimately confirmed, contained just one line dealing with Vitale's claim. The plans provided that "the claims of Vincent Vitale shall be unsecured."

Vitale and Christianson were served with notice of a confirmation hearing and a copy of the Boyds' plan dated September 14, 1994. They did not object to the plan or attend the original confirmation hearing. After the Boyds' plan was confirmed, with modifications, they were served with notice that the plan had been confirmed. Vitale received a check from the chapter 12 trustee for $3,837.09 for an unsecured claim. He and Christianson were subsequently served with notice of the Boyds' first chapter 12 discharge.

After reviewing the circumstances of this case, I find that the notice received by Vitale in the first chapter 12 proceeding was not reasonably calculated to apprise him that the debtors intended to wholly disallow his lien. Vitale filed a secured claim which was never challenged either by objection to claim, a Rule 3012 motion or an adversary proceeding. His secured claim was deemed allowed pursuant to 11 U.S.C. § 502(a). The simple statement found in the chapter 12 plan that Vitale's claim "shall be unsecured" was insufficient to invalidate his lien through the plan confirmation process.

But what of the language of § 1227 regarding the effect of confirmation? This section provides that property of the estate vests in the debtor "free and clear of any claim

14

or interest of any creditor provided for by the plan."[40]  As noted in *Shook*, "a chapter 13 plan does not 'provide for' a lien 'simply by failing or refusing to acknowledge it or by calling the creditor unsecured.'"[41]  Because the Boyds' prior chapter 12 plan failed to provide for Vitale's claim, § 1227(c) did not invalidate the lien.  Vitale's secured claim survived the first chapter 12 proceeding and remained on the debtors' property at the time the second chapter 12 petition was filed.[42]

I make this finding despite the Ninth Circuit's recent holding in *Espinosa v. United Student Aid Funds, Inc.*[43]  In *Espinosa*, the Ninth Circuit found that a debtor could discharge a student loan by including it in a chapter 13 plan, notwithstanding the "special procedures" applicable to such debts under 11 U.S.C. § 523(a)(8).[44]  If a student loan creditor received notice of a chapter 13 plan which proposed discharge of its debt, the debt would be discharged unless the creditor objected to the plan or initiated an adversary proceeding.[45]  In other words, a debtor could effectively avoid the Bankruptcy Code's specific requirement of an adversary proceeding and a showing of undue hardship simply by providing for discharge of the student loan in the plan.  By analogy, then, if these requirements can be waived

---

[40] 11 U.S.C. § 1227(c).

[41] *Shook*, 278 B.R. at 826, *citing Deutchman v. Internal Revenue (In re Deutchman),* 192 F. 3d 457, 461 (4th Cir. 1999).  *See also  In re Beard,* 112 B.R. 951, 954 (Bankr.N.D.Ind. 1990) ("Even where confirmed without objection, a plan will not eliminate a lien simply by failing or refusing to acknowledge it or by calling the creditor unsecured.").

[42] The debtors did schedule Vitale as a secured creditor in their second chapter 12 case, although his claim is listed as unliquidated and disputed.

[43] __ F.3d __, 2008 WL 5158728 (9th Cir. Dec. 10, 2008), *amending* 545 F.3d 1113 (9th Cir. 2008).

[44] 2008 WL 5158728 at 3.

[45] 2008 WL 5158728 at 5.

15

through the plan confirmation process, why can't a consensual lien be avoided through the same process? I believe the answer lies in the nature of the debt. The debts involved in *Espinosa* were unsecured claims arising from student loans. The creditors had no lien rights. Here, Vitale's lien was unchallenged and passed through bankruptcy unaffected.[46] *Espinosa* is distinguishable from the case at bar. The cases are not analogous.

Vitale's lien survived the Boyds' first chapter 12 proceeding, and he received no notice of the second chapter 12 proceeding until well after the claim bar deadline had expired. His secured claim has not yet been affected in this bankruptcy proceeding.[47] Further, the confirmed plan in the instant case is not binding on him. A hearing on his motion to set aside the order confirming plan will be scheduled.

Conclusion

Vincent Vitale has a valid lien against the sale proceeds. This does not mean, however, that he receives immediate payment. The plan will have to be modified to provide for his secured claim. An order and judgment will be entered consistent with this memorandum.

DATED: February 2, 2009

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

---

[46] Such liens generally survive bankruptcy. *Shook*, 278 B.R. at 821, *citing Long v. Bullard*, 117 U.S. 617, 620-21 (1886); *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992).

[47] 11 U.S.C. § 523(a)(3)(A).

Serve:  G. Oczkus, Esq.
       V. Vitale, Esq.
       R. Pomeroy, Esq.
       M. E. Beardsley, Esq.
       L. Compton, Trustee
       U. S. Trustee

                 02/02/09

17